**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

ELECTRO-MECHANICAL RECERTIFIERS,
L.L.C.

VERSUS

SAMSUNG E&C AMERICA, INC.

CIVIL ACTION

24-652-SDD-EWD

<u>**RULING**</u>

This matter is before the Court on the Motion to Dismiss, or alternatively to Transfer Venue,[1] filed by Defendant Samsung E&C America, Inc. ("SECAI"). Plaintiff Electro-Mechanical Recertifiers, L.L.C. ("EMR") opposes the Motion.[2] SECAI filed a Reply,[3] and EMR filed a Surreply.[4] For the reasons that follow, the Motion will be granted in part and denied in part.

I.    **BACKGROUND**

This case arises from a contractual relationship between EMR and SECAI. At the relevant time, SECAI was the general contractor on a construction project located in Taylor, Texas (the "Project").[5] In January of 2024, some of SECAI's electrical gear at the Project was damaged by rainwater.[6] SECAI sought the services of EMR to assess the damaged gear and prepare a plan and proposal for cleaning and restoration.[7]

---

[1] Rec. Doc. 9.
[2] Rec. Doc. 17.
[3] Rec. Doc. 18.
[4] Rec. Doc. 21.
[5] Rec. Doc. 1, ¶ 4.
[6] *Id.* at ¶ 5.
[7] *Id.* at ¶ 6.

On February 5, 2024, SECAI and EMR entered into a Technical Emergency Response Agreement (the "TERA"). The opening paragraph of the TERA reads, in part, as follows:

> EMR agrees to perform technical emergency consulting and technical restoration services for property and equipment damage restoration, repair, replacement and recertification services as more specifically set forth in Work Order(s) (the "Work") for Client [SECAI]…[8]

EMR alleges that it agreed to perform "consulting services, including an assessment of the impacted Gear and the preparation of a plan and proposal for cleaning and restoration of the Gear ("Consulting Work")," in exchange for payment on a time and expense basis not to exceed $24,800.[9] EMR performed the Consulting Work and invoiced SECAI $24,108.52.[10]

Shortly after the completion of the Consulting Work, EMR alleges it "entered into a contractual agreement or modification" with SECAI whereby EMR would clean and restore the damaged electrical gear (the "Restoration Work") in exchange for a projected total cost of $4,300,000.[11] EMR alleges it performed the Restoration Work "diligently" from February 23, 2024, until March 8, 2024, when "SECAI represented that a stop work order was forthcoming in light of weather and flooding."[12] On March 11, 2024,[13] SECAI sent EMR a letter (the "March 11 Letter") stating that "SECAI will not be requiring any services of EMR for the [Project] including those related to the deep cleaning of electrical gear."[14]

---

[8] Rec. Doc. 9-4, p. 1.
[9] Rec. Doc. 1, ¶¶ 6–7.
[10] *Id.* at ¶ 8.
[11] *Id.* at ¶ 9.
[12] *Id.* at ¶ 10.
[13] According to EMR, the letter was incorrectly dated March 7, 2024. *See* Rec. Doc. 17, p. 5.
[14] Rec. Doc. 1, ¶ 12. EMR alleges the March 11 letter did not contain any reference to weather as the reason for the order to discontinue work. *Id.* at ¶ 13.

The March 11 Letter further provided that SECAI "has not and will not authorize or otherwise approve EMR to render any services . . . other than the consulting services rendered from Feb 7-11, 2024."[15] EMR demobilized from the Project following receipt of the March 11 Letter.[16]

EMR alleges that it completed approximately 38.3% of the Restoration Work prior to the March 11 Letter.[17] EMR asserts that it is entitled to payment in proportion to the amount of work it completed.[18]

EMR also alleges:

> During the time that EMR was on the Project site and continuing thereafter in the Baton Rouge, La. area, Plaintiff's computers and cell phones were hacked and electronically stored information, private satellite video communications, and other communications personal and proprietary to EMR and its employees, was accessed, intercepted, disclosed, copied and damaged without permission, consent or authorization.[19]

EMR states that, "[u]pon information and belief," SECAI committed these actions intentionally.[20]

Based on the foregoing facts, EMR's Complaint enumerates the following seven claims:

- Count I: Breach of Contract (Non-Payment on Work Performed);[21]

- Count II: Breach of Contract (Wrongful Termination);[22]

---

[15] *Id.* at ¶ 13.
[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 16.
[18] *Id.* EMR alleges that the only payments SECAI has made for the Consulting and Restoration Work are $765,924.95 paid on May 38, 2024, and $516,743.38 paid on June 26, 2024. *Id.* at ¶ 19.
[19] *Id.* at ¶ 21.
[20] *Id.*
[21] *Id.* at ¶¶ 23–25.
[22] *Id.* at ¶¶ 26–30.

- Count III: Quantum Meruit;[23]

- Count IV: Misappropriation of Trade Secrets (Texas Law);[24]

- Count V: Louisiana Uniform Trade Secrets Act;[25]

- Count VI: Louisiana Unfair Trade Practices Act;[26]

- Count VII: Civil Action Under the Computer Fraud and Abuse Act, Stored Communications Act, and Wire and Electronic Communications Interception and Interception of Oral Communications Law.[27]

SECAI moves to dismiss for lack of personal jurisdiction, failure to state a claim, and improper venue, or alternatively to transfer venue.[28]

## II.    LAW AND ANALYSIS

### A. Motion to Dismiss for Improper Venue, or to Transfer Venue

#### 1.  Rule 12(b)(3)

SECAI moves to dismiss for improper venue pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(3). In considering a Rule 12(b)(3) motion, the court is not limited to considering the facts pleaded in the complaint.[29] Further, a plaintiff "need only make a prima facie case to establish venue if the court does not hold an evidentiary hearing."[30] The court "must accept as true all allegations in the complaint and resolve all conflicts in favor of plaintiff."[31]

---

[23] *Id.* at ¶¶ 31–33.
[24] *Id.* at ¶¶ 34–38.
[25] *Id.* at ¶¶ 39–43.
[26] *Id.* at ¶¶ 44–50.
[27] *Id.* at ¶¶ 51–54.
[28] Rec. Doc. 9.
[29] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).
[30] *Martin v. Impact Health*, No. CV 23-2497, 2023 WL 7498175, at *3 (E.D. La. Nov. 13, 2023) (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)).
[31] *Sinners and Saints, L.L.C. v. Noire Blanc Films, L.L.C.*, 937 F. Supp. 2d 835, 845 (E.D. La. 2013) (quoting *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. App'x 612, 615 (5th Cir. 2007)).

Parties may limit future litigation to a particular venue through the use of a forum selection clause. The TERA contains a forum selection clause which reads as follows:

> **Disputes.** All disputes shall be resolved in a court of competent jurisdiction in East Baton Rouge Parish, Baton Rouge, Louisiana.[32]

Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[33] This may be done through demonstration that the clause "results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the plaintiff of his day in court."[34] "The party resisting enforcement on these grounds bears a 'heavy burden of proof.'"[35]

SECAI does not argue the forum selection clause is unenforceable. Rather, SECAI acknowledges the forum selection clause but argues it does not apply to this dispute.[36] Specifically, SECAI asserts that the TERA – the contract containing the forum selection clause – only applies to Consulting Work. Because EMR's lawsuit seeks payment for the Restoration Work rather than the Consulting Work, SECAI concludes the forum selection clause does not apply.[37] In opposition, EMR argues the TERA encompasses the Restoration Work.[38]

In support of its position that the TERA covers the Restoration Work, EMR emphasizes the following language of the TERA: "EMR agrees to perform technical

---

[32] Rec. Doc. 9-4, p. 2.
[33] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (citation omitted).
[34] *Mitsui & Co. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (citing *M/S Bremen*, 407 U.S. at 12).
[35] *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *M/S Bremen*, 407 U.S. at 17).
[36] Rec. Doc. 9-3, pp. 10–11.
[37] SECAI states that it paid for the Consulting Work in full (*see id.* at p. 3). EMR does not argue otherwise in its Opposition.
[38] Rec. Doc. 17, pp. 7–9.

emergency consulting **and technical restoration services** for property and equipment damage restoration, repair, replacement and recertification services as more specifically set forth in Work Order(s)…"[39] EMR explains that with the signing of the TERA on February 5, 2024, it submitted a work order detailing the scope of the Consulting Work and a price of $24,800, which SECAI accepted.[40] After completing the Consulting Work, on February 10, 2024, EMR states that it sent SECAI a second "work order package," this time for the Restoration Work, specifying a total cost of $4,300,000.[41] In response, two days later, SECAI sent EMR correspondence entitled "LETTER OF INTENT / NOTICE TO PROCEED" (the "Notice to Proceed"), which stated in part:

> This LETTER OF INTENT shall serve as notice of our intent to [EMR] to proceed with Deep cleaning of electrical gear, on February 12, 2024. We will put our best efforts to issue an official purchase order as soon as possible.
>
> The contract amount that we agreed on this project is as shown below:
> …
>
> Contract Amount: TBD ($4,300,000 + $24,800)
> …
>
> We look forward to your successful implementation of the works and would like to welcome you to our project.[42]

According to EMR, SECAI enclosed two documents with the Notice to Proceed: a copy of the executed TERA, and a copy of EMR's proposal package for the Restoration Work.[43] EMR contends that the Notice to Proceed was a "Work Order" as contemplated by the TERA such that the Restoration Work is covered by that agreement and its forum

---

[39] Rec. Doc. 9-4, p. 1 (emphasis added).
[40] Rec. Doc. 17, p. 2 (citing Rec. Doc. 17-1, pp. 2–3, ¶¶ 4–5).
[41] *Id.* at p. 3 (citing Rec. Doc. 17-1, p. 3, ¶ 7).
[42] Rec. Doc. 17-1, p. 51.
[43] *Id.* at pp. 2–3, ¶ 9.

selection clause.[44] Although SECAI stated in its Notice to Proceed that it would make "best efforts to issue an official purchase order as soon as possible,"[45] EMR represents that it had no expectation that any such possible forthcoming purchase order would materially differ from the Notice to Proceed, the TERA, and the corresponding accepted project proposal for the Restoration Work.[46] EMR further explains that, "[t]hroughout EMR's performance of the Restoration Phase Work, Defendant closely oversaw and provided input/direction on EMR's work."[47]

Continuing, EMR avers:

> On February 22, 2024, after the parties had executed the TERA, Defendant had issued its Notice to Proceed, and EMR had mobilized to the project site at Defendant's direction, Defendant unexpectedly sent EMR a proposed "Master Services Agreement for Construction Services" ("MSA"), which, like the TERA, called for work to be performed under subsequent work orders and contained general terms and conditions that were to apply to such work.[48]

EMR explains that it "entertained the possibility of negotiating and executing the MSA" in order to avoid unnecessary disputes, but that it "never disclaimed or otherwise abrogated the existing and fully executed TERA."[49] According to EMR, it made clear to SECAI that as long as the MSA remained unexecuted, EMR was performing the Restoration Work pursuant to the TERA and the Notice to Proceed.[50] The MSA was never finalized.

In support of its argument that the TERA only covers the Consulting Work, SECAI first points to the following provision of the TERA:

> Client acknowledges that the EMR inspection of the Project

---

[44] Rec. Doc. 17, pp. 8–9.
[45] Rec. Doc. 17-1, p. 51.
[46] Rec. Doc. 17, p. 4.
[47] *Id.* (citing Rec. Doc. 17-1, p. 3, ¶ 10).
[48] *Id.*
[49] *Id.* at p. 5 (citing Rec. Doc. 17-1, p. 5, ¶ 12).
[50] *Id.*

> site was limited to an inspection of the damage existing as of the inspection date. EMR did not and will not conduct any tests or inspections of the Project site not specifically identified in this Agreement. Any additions to the Work identified during any written damage communication, site walk, and/or pre-bid inspection but not specifically included herein or in an approved Change Order are not included in the scope of the Work.[51]

SECAI concludes the TERA and its forum selection clause do not apply to the Restoration Work because "[t]here was no Change Order and the TERA was never amended to add Restoration Work."[52]

In the Court's view, the language providing that "EMR's inspection of the Project site was limited to an inspection of the damage existing as of the inspection date" does not clearly limit the overall scope of the work under the TERA. By its terms, the provision limits "EMR's inspection," not "the Work." Moreover, the TERA expressly defines "the Work" as including not only consulting services, but also "technical restoration services for property and equipment damage restoration, repair, replacement and recertification services as more specifically set forth in Work Order(s)…"[53] The TERA further provides that all of its provisions "are incorporated by reference into any Work Order(s) subsequently executed by or performed for Client such that all the terms and conditions stated above shall apply to any project upon which EMR performs work for Client as directed by a Work Order."[54] At this stage, the Court finds that the TERA does not expressly limit EMR's services to consulting; rather, it contemplates the possibility of multiple Work Orders which may involve various services, namely including

---

[51] Rec. Doc. 9-4, p. 1.
[52] Rec. Doc. 9-3, p. 11.
[53] Rec. Doc. 9-4, p. 1 (emphasis added).
[54] *Id.*

"restoration."[55]

SECAI additionally relies on the following language of the TERA:

> In the event that the parties are unable to execute a written Work Order, and upon receipt of oral authorization from a Client Representative, EMR shall commence the Work as soon as reasonably practicable, and the Client shall be bound to pay for said Work in accordance with the Contract Documents. … Within 72 hours of commencement of the Work, the parties shall execute a written Work Order. If the parties cannot agree upon the terms of a Work Order within 72 hours of the commencement of Work, EMR shall stop Work and be entitled to payment for any partial Work performed in compliance with the Contract Documents.[56]

SECAI argues the Restoration Work is not encompassed by the TERA because it never issued a written Work Order for such services.[57]

The Court does not find support for SECAI's position in the contractual language quoted above. First, the Court is not inclined to find at this stage that the Notice to Proceed was not a "Work Order" in the context of the TERA. Further, even if the Notice to Proceed was not a "Work Order," the Court does not read the quoted provision to exclude restoration services from the scope of the TERA. Rather, even without a written Work Order, the TERA states that "EMR shall commence the Work as soon as reasonably practicable." The only specified consequence for the absence of a Work Order is that EMR is directed to stop work within 72 hours, and is entitled to partial payment for any work performed pursuant to "oral authorization."

SECAI also relies on the circumstances surrounding the unexecuted MSA. SECAI argues EMR was aware that the TERA did not govern the Restoration Work because an

---

[55] *Id.*
[56] *Id.*
[57] Rec. Doc. 18, p. 2.

EMR representative stated in an email that "[m]y partner and I need to sign this contract [the MSA] today."[58] SECAI also asserts that EMR made revisions to the proposed draft MSA.[59] However, in dispute, EMR asserts that it "re-iterated to Defendant on numerous occasions that, as long as the MSA remained in negotiation and unexecuted, EMR was performing the Restoration Phase Work under the executed TERA and Defendant's Notice to Proceed."[60] The Court finds there is a conflict as to the facts with respect to this argument which should be resolved in EMR's favor at this stage of the litigation.

Finally, SECAI argues the forum selection clause is permissive rather than mandatory. "A forum selection clause is mandatory if it 'affirmatively requires that litigation arising from the contract be carried out in a given forum.'"[61] In *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, the Fifth Circuit found a forum selection clause providing that "any litigation arising under or related to the contract or the bidding or award thereof *shall* be instituted in the 19th Judicial District Court in and for the Parish of East Baton Rouge, State of Louisiana," was mandatory.[62] Similarly, the TERA provides that "[a]ll disputes *shall* be resolved in a court of competent jurisdiction in East Baton Rouge Parish, Baton Rouge, Louisiana."[63] As in the *PCL* case, the Court finds that this language creates a mandatory forum selection clause.[64]

---

[58] *Id.* (citing Rec. Doc. 9-8, p. 1).

[59] *Id.*

[60] Rec. Doc. 17, p. 5 (citing Rec. Doc. 17-1, p. 5, ¶ 12).

[61] *PCL Civ. Constructors, Inc. v. Arch Ins. Co.*, 979 F.3d 1070, 1073 (5th Cir. 2020) (quoting *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 766 (5th Cir. 2016)).

[62] *Id.* (emphasis in original).

[63] Rec. Doc. 9-4, p. 2 (emphasis added).

[64] *See also All. Health Grp., LLC v. Bridging Health Options, LLC*, 553 F.3d 397, 398–99 (5th Cir. 2008) (provision stating that "exclusive venue for any litigation related hereto shall occur in Harrison County, Mississippi," was mandatory); *Kevlin Servs., Inc. v. Lexington State Bank*, 46 F.3d 13, 14-15 (5th Cir. 1995) (finding mandatory a forum selection clause which stated: "The legal venue of this contract and any disputes arising from it shall be settled in Dallas County, Texas."); *All. Consulting Grp., LLC v. SMICO Mfg. Co.*, No.

Further, although neither party raised an issue in this respect, the Court notes that the Fifth Circuit has expressly held that where a forum selection clause mandates venue "in" a certain county (or in this case, a parish), venue is proper in either federal or state court as long as the courthouse is physically located within the named location.[65] Because the Middle District of Louisiana courthouse in located "in East Baton Rouge Parish," venue is proper.

Viewing the conflicts in the facts in EMR's favor,[66] the Court finds that EMR has made a sufficient showing of proper venue in this District pursuant to the mandatory forum selection clause of the TERA. In response to a proposal package from EMR detailing the Restoration Work, SECAI issued a written Notice to Proceed directing EMR to proceed with the "[d]eep cleaning of electrical gear,"[67] and transmitted to EMR along with the Notice to Proceed the TERA and EMR's proposal. Further, the terms of the TERA do not explicitly limit "the Work" to consulting services. Under these circumstances, the Court finds that EMR has made a sufficient showing that the Restoration Work was covered by the TERA which contains the forum selection clause.

EMR has asserted multiple claims, and venue must be proper for each of them.[68] The forum selection clause clearly applies to EMR's claims for breach of contract (Counts I and II) and quantum meruit (Count III) because those claims directly arise from the contractual relationship of the parties.

---

1:13CV274-HSO-RHW, 2013 WL 5949552, at *2 (S.D. Miss. Nov. 6, 2013) (parties' agreement "to have [all] disagreements heard in Oklahoma courts unless [otherwise] agreed to" constituted mandatory forum selection clause).

[65] *All. Health Grp., LLC*, 553 F.3d at 399–400.

[66] *See Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241–42 (5th Cir. 2008); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000).

[67] Rec. Doc. 17-1, p. 51.

[68] *See Guajardo v. State Bar of Texas*, 803 F. App'x 750, 755 (5th Cir. 2020); 14D Charles Alan Wright & Arthur R. Miller Federal Practice and Procedure § 3808 (4th ed. 2019).

EMR's remaining claims involve SECAI's alleged computer hacking activities and misappropriation of EMR's trade secrets (Counts IV through VII). Courts in this Circuit have explained that "[t]he scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it. Whether a forum selection clause encompasses other claims depends principally on how broadly the clauses are worded."[69] In cases where a forum selection clause states that it embraces claims "relating to" the contract, courts have found that the clause extends to tort claims "if those claims ultimately depend on the existence of a contractual relationship between the parties, if resolving those claims relates to the interpretation of the contract, or if those tort claims involve the same operative facts as the parallel claim for breach of contract."[70] Courts hold that "[s]uch clauses are broad, 'encompassing all claims that have some possible relationship with the contract, including claims that may only "relate to" ... the contract.'"[71]

SECAI does not put forth any argument addressing whether the forum selection clause, assuming its applicability to the lawsuit, encompasses EMR's claims based on hacking and theft of trade secrets. The phrasing of the forum selection clause in this case is extremely broad, applying to "all disputes."[72] EMR alleges that the hacking and misappropriation committed by SECAI occurred "[d]uring the time that EMR was on the Project site and continuing thereafter[.]"[73] EMR also alleges that it disclosed proprietary information to SECAI "under the premise that [SECAI] would be paying EMR to perform the Restoration Work in total[.]"[74] Analysis of whether EMR was reasonable in disclosing

---

[69] *MaxEn Cap., LLC v. Sutherland*, No. H-08-3590, 2009 WL 936895, at *6 (S.D. Tex. Apr. 3, 2009) (citations omitted).
[70] *Id.* (citation omitted).
[71] *Id.* (quoting *Phillips v. Audio Active Ltd.,* 494 F.3d 378, 389 (2d Cir.2007)).
[72] Rec. Doc. 9-4, p. 2.
[73] Rec. Doc. 1, ¶ 21.
[74] *Id.* at ¶ 35.

its trade secrets to SECAI may well depend on an interpretation of the TERA, and the claims seem to involve overlapping operative facts with the contractual claims. While a close question, in the absence of argument by SECAI, the Court finds sufficient overlap of the operative facts exists among all of EMR's claims such that the forum selection clause applies to all counts enumerated in the Complaint. The Motion to Dismiss for improper venue will be denied.

### 2. 28 U.S.C. § 1404(a)

SECAI alternatively moves to transfer this action to the Western District of Texas pursuant to 28 U.S.C. § 1404(a), which provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A § 1404(a) analysis typically involves consideration of both private and public interest factors.[75] However, where a forum selection clause is involved, the analysis changes. In the context of a § 1404(a) motion, the Supreme Court stated in *Atlantic Marine Const. Co. v. U.S. Dist. Court for Western Dist. of Texas* that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases."[76] The party resisting application of the forum selection clause is given no weight as to their preferred forum, and courts "should not consider arguments about the parties' private interests."[77] Therefore, the Court will only consider the public interest factors, which are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home;

---

[75] *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).
[76] *Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 63 (2013) (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988)).
[77] *Id.* at 63–64. *See also Stellar Restoration Servs., LLC v. James Christopher Courtney*, 533 F. Supp. 3d 394, 427 (E.D. Tex. 2021).

(3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law."[78] Because of the deference given to forum selection clauses, the public interest factors will "rarely" defeat a forum selection clause, and the clause "should control except in unusual cases."[79]

With respect to the first public interest factor, SECAI cites statistics showing that the average time from filing to trial for civil cases is about 4.4 months longer in this District than in the Western District of Texas.[80] However, SECAI concedes that the factor is "relatively neutral."[81] The second factor relates to the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."[82] Overall, the Court finds this factor leans in favor of transfer because most of the events allegedly occurred in Texas. With respect to the third factor, SECAI acknowledges the TERA contains a choice of law provision providing that "[a]ll interpretations are to be made in accordance with Louisiana law."[83] As discussed above, SECAI's argument that the TERA does not apply to this case is rejected at this stage. SECAI submits no further argument that Louisiana law should not apply to this diversity action. Further, to the extent Texas law may apply, courts within this District have sufficient familiarity with Texas law. Accordingly, this factor does not heavily favor transfer. Finally, SECAI concedes the fourth public interest factor is not a concern in this

---

[78] *In re Volkswagen AG*, 371 F.3d at 203.
[79] *Atlantic Marine*, 571 U.S. at 64.
[80] Rec. Doc. 9-3, p. 24 (citing https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2024/06/30-3).
[81] *Id.*
[82] *In re Volkswagen AG,* 371 F.3d at 206.
[83] Rec. Doc. 9-4, p. 3.

case and is therefore neutral.[84]

On balance, the Court finds that an application of the public interest factors does not reveal extraordinary circumstances which would warrant deviation from the forum selection clause. Accordingly, SECAI's motion to transfer the case to the Western District of Texas will be denied.

## B. Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) allows defendants to challenge personal jurisdiction. However, a party may waive its right to assert a lack of personal jurisdiction by consenting to an enforceable forum selection clause.[85] As the Court noted above in analyzing venue, EMR has made a sufficient showing that the claims in this case are governed by an enforceable forum selection clause. Accordingly, SECAI has waived its objection to personal jurisdiction by agreeing in advance to resolve disputes in this locale.[86]

## C. Motion to Dismiss for Failure to State a Claim

### 1. Legal Standard

---

[84] Rec. Doc. 9-3, p. 25.
[85] *See, e.g., New South Equipment Mats, LLC v. Keener*, 989 F.Supp.2d 522, 526 (S.D. Miss Nov. 5, 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985)); *Receivables Exch., LLC v. Advanced Tech. Servs., Inc.*, No. CIV.A. 14-668, 2014 WL 5782849, at *2 (E.D. La. Nov. 6, 2014) (citing *Kevlin Servs., Inc. v. Lexington State Bank,* 46 F.3d 13, 15 (5th Cir. 1995) ("a valid forum selection clause in a contract confers personal jurisdiction over the parties to the contract in the chosen forum."). *See also Weber Aircraft, L.L.C. v. Krishnamurthy*, No. 4:12CV666, 2013 WL 1898280, at *4 (E.D. Tex. Apr. 12, 2013), *report and recommendation adopted*, No. 4:12CV666, 2013 WL 1898267 (E.D. Tex. May 7, 2013) ("When a party consents to jurisdiction in a forum, the trial court's exercise of personal jurisdiction over it does not violate due process even in the absence of contacts with [the forum state].").
[86] Where forum selection clauses "have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' their enforcement does not offend due process." *Burger King*, 471 U.S. at 473 (quoting *M/S Bremen*, 407 U.S. at 15). SECAI makes no argument that its agreement to the forum selection clause was a product of any fraud or coercion, or that enforcement of the forum selection clause would violate due process. The Court does not find that enforcement of the clause offends due process.

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[87] The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[88] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[89]

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss: "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[90] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[91] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[92] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[93] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[94] On a

---

[87] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[88] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (internal citations omitted).

[89] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)).

[90] *Twombly*, 550 U.S. at 555 (2007) (internal citations and brackets omitted).

[91] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

[92] *Id.*

[93] *Id.*

[94] *Taha v. William Marsh Rice Univ.*, 2012 WL 1576099, at *2 (S.D. Tex. 2012) (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[95]

### 2. Discussion

SECAI seeks dismissal of Counts IV–VII of the Complaint. The Court will address the claims in turn.

### a. Count IV: Misappropriation of Trade Secrets under Texas Law

In Count IV, EMR lodges a claim for misappropriation of trade secrets under Texas law. EMR alleges that, "under the premise that [SECAI] would be paying EMR to perform the Restoration Work in total, SECAI requested that EMR provide certain trade secrets relating to the Restoration Work, including but not limited to a demonstration of EMR's work methods and a list of products and chemicals used to restore electrical gear and related information concerning means and methods for various levels of cleaning and restoration ("Trade Secrets")."[96] Pursuant to SECAI's request, EMR "disclosed some but not all of the Trade Secrets to SECAI in confidence."[97] EMR alleges that "SECAI has misappropriated the Trade Secrets, including those not disclosed by EMR but obtained by SECAI through illicit means including the hacking of Plaintiff's computers and cell phones, and utilized this information to either self-perform the remaining Restoration Work or have this work performed by others."[98]

Under Texas law, misappropriation of trade secrets is established by showing: "(1) existence of a trade secret, (2) breach of a confidential relationship or improper discovery of a trade secret, (3) use of the trade secret without the plaintiff's authorization, and (4)

---

[95] *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).
[96] Rec. Doc. 1, ¶ 35.
[97] *Id.* at ¶ 36.
[98] *Id.* at ¶ 37.

resulting damages."[99]

EMR alleges the trade secrets at issue include "a demonstration of EMR's work methods and a list of products and chemicals used to restore electrical gear and related information concerning means and methods for various levels of cleaning and restoration."[100] SECAI argues this is insufficient to allege the existence of a trade secret because "[EMR] does not allege that it created or formulated the 'products and chemicals used to restore electrical gear,'" and "[EMR] fails to identify with any particularity its supposedly secret 'means and methods' of cleaning and restoration and why those methods are not generally known or readily accessible by others in the same industry."[101]

As understood under Texas law, "[a] trade secret is any formula, pattern, device, or compilation of information, which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it."[102] Further, "to qualify as a trade secret the information cannot be generally known by others in the same business nor readily ascertainable by an independent investigation."[103] Texas courts apply the following six factors in determine whether a trade secret exists:

> (1) the extent to which the information is known outside of [the claimant's] business; (2) the extent to which it is known by employees and others involved in [the claimant's] business; (3) the extent of the measures taken to guard the secrecy of the information, (4) the value of the information to [the claimant] and to his competitors; (5) the amount of effort or money expended by [the claimant] in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by

---

[99] *Pension Advisory Grp., Ltd. v. Country Life Ins. Co.*, 771 F. Supp. 2d 680, 701 (S.D. Tex. 2011) (quoting *Calce v. Dorado Exploration, Inc.,* 309 S.W.3d 719, 737–38 (Tex.App.-Dallas 2010)).
[100] Rec. Doc. 1, ¶ 35.
[101] Rec. Doc. 9-3, p. 15.
[102] *Pension Advisory Grp., Ltd.*, 771 F. Supp. 2d at 701.
[103] *Zoecon Indus., a Div. of Zoecon Corp. v. Am. Stockman Tag Co.*, 713 F.2d 1174, 1179 (5th Cir. 1983).

others.[104]

The Court finds that EMR has not sufficiently alleged the existence of a trade secret. The Complaint essentially leaves all six of the Texas law factors cited above unaddressed. EMR has particularly failed to allege these materials were not generally known or readily ascertainable, the value of the information, and measures taken to guard the secrecy of the information. Furthermore, "[t]he owner of a trade secret will lose its trade secret by disclosure unless the secret is revealed in some manner by which the owner creates a duty and places that duty on the other party not to disclose further or use the trade secret in violation of that duty."[105] Aside from alleging it disclosed its trade secrets to SECAI "in confidence,"[106] EMR fails to allege supporting facts giving rise to a duty of confidentiality on the part of SECAI. Accordingly, the claim for misappropriation of trade secrets under Texas law will be dismissed without prejudice.

### b. Count V: Louisiana Uniform Trade Secrets Act

Based on the same allegations as Count IV, EMR brings an alternative claim under the Louisiana Uniform Trade Secrets Act (LUTSA).[107] To state a LUTSA claim, a plaintiff must allege: "(a) the existence of a trade secret, (b) a misappropriation of the trade secret by another, and (c) the actual loss caused by the misappropriation."[108] LUTSA defines "trade secret" as follows:

> "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

---

[104] *EEMSO, Inc. v. Compex Techs., Inc.*, No. 305-CV-0897-P, 2006 WL 2583174, at *5 (N.D. Tex. Aug. 31, 2006) (citations omitted).
[105] *EEMSO, Inc.*, 2006 WL 2583174, at *6 (citations omitted).
[106] Rec. Doc. 1, ¶ 36.
[107] La. R.S. 51:1431 *et seq.*
[108] *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 156 (5th Cir. 2018) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 648 (5th Cir. 1997) (citing La. R.S. 51:1431).

(a) derives independent economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use, and

(b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.[109]

Thus, to establish the existence of a trade secret, EMR "must allege that (1) it has taken specific measures to protect information that has (2) independent economic value from not being generally known or readily ascertainable."[110]

In *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, the plaintiff alleged its trade secrets included "laboratory technology" consisting of "equipment lists, laboratory designs, and testing processes and procedures."[111] The Eastern District of Louisiana held the allegations insufficient to establish the existence of a trade secret because the plaintiff "provide[d] no basis for the Court to conclude that this information is distinct from generally available knowledge, or information that any specialist in the [ ] industry would know."[112] Similarly here, the Complaint contains no allegations that EMR's purported trade secrets derive independent economic value from not being generally known or readily ascertainable. Accordingly, further factual enhancement is needed, and Count V will be dismissed without prejudice.

### c. Count VI: Louisiana Unfair Trade Practices Act

---

[109] La. R.S. 51:1431(4).
[110] *Brock Servs., LLC v. Rogillio*, No. CV 18-867-JWD-EWD, 2019 WL 9096410, at *6 (M.D. La. June 17, 2019).
[111] *Bureau Veritas Commodities & Trade, Inc. v. Nanoo*, No. CV 20-3374, 2021 WL 2142466, at *6 (E.D. La. May 26, 2021).
[112] *Id.* (citing *Select Energy Servs., Inc. v. Mammoth Energy Servs., Inc.*, No. 19-28, 2019 WL 1434586, at *5 (W.D. Okla. Mar. 29, 2019)).

"LUTPA prohibits '[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.'"[113] The statute provides a private right of action for "'[a]ny person who suffers any ascertainable loss' as a result of the unlawful conduct."[114] "To recover, the plaintiff must 'prove some element of fraud, misrepresentation, deception or other unethical conduct.'"[115] The Louisiana Supreme Court instructs that, "in establishing a LUTPA claim, plaintiff must show that 'the alleged conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"[116] The range of conduct covered by LUTPA is "extremely narrow."[117]

EMR alleges:

> Upon information and belief, SECAI has developed or supplied a service using the stolen or misappropriated computer data to acquire the methods and techniques proprietary to EMR to perform or hire others to perform the work that SECAI contracted with EMR to perform, and such activity constitutes an unfair method of competition and unfair practice or act[.][118]

SECAI argues that EMR's failure to adequately allege a claim for misappropriation of trade secrets should result in the dismissal of the LUTPA claim.[119]

The Court has concluded that further factual elaboration is needed regarding SECAI's alleged misappropriation of EMR's trade secrets. Given EMR's LUTPA claim is

---

[113] *IberiaBank v. Broussard*, 907 F.3d 826, 839 (5th Cir. 2018) (quoting La. R.S. 51:1405(A)).

[114] *Id.* (quoting La. R.S. 51:1409(A)).

[115] *Id.* (quoting *Tubos de Acero de Mexico, S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (quoting, in turn, *Omnitech Intern., Inc. v. Clorox Co.,* 11 F.3d 1316, 1332 (5th Cir. 1994)).

[116] *J&J Sports Prods., Inc. v. Tienda y Taqueiria "La Frontera," LLC*, No. 16-568, 2017 WL 3166734, at *13 (M.D. La. July 25, 2017) (quoting *Quality Envtl. Processes, Inc. v. I.P. Petroleum Co., Inc.*, 13-1582 (La. 5/7/14), 144 So. 3d 1011, 1025)).

[117] *Id.* (quoting *Quality Envtl. Processes, Inc.*, 144 So. 3d at 1025).

[118] Rec. Doc. 1, ¶ 50.

[119] Rec. Doc. 9-3, pp. 16–17.

based on the same alleged underlying conduct, the Court finds that Count VI should also be dismissed without prejudice.

### d. Count VII: Computer Fraud and Abuse Act; Stored Communications Act; and Electronic Communications Privacy Act

In Count VII, EMR asserts causes of action under three federal statutes: the Computer Fraud and Abuse Act (CFAA), the Stored Communications Act (SCA), and the Electronic Communications Privacy Act (ECPA).

#### Computer Fraud and Abuse Act (18 U.S.C. § 1030)

"The CFAA criminalizes various fraudulent or damaging activities related to the use of computers."[120] The CFAA also authorizes civil actions for violations of the statute, but only under specified circumstances.[121] As SECAI points out, the pleading requirements for civil actions under the CFAA are complex, and EMR does not specify in its Complaint which of the several subsections it claims SECAI violated. Further, EMR provides no clarification in its Opposition regarding the CFAA claim.

The Court finds that EMR's CFAA claim "provides little more than a recitation of certain statutory elements,"[122] and it requires further factual enhancement. As another court observed under similar circumstances, "it isn't up to [the defendant] or this Court to guess what statutory provisions are at issue" in connection with EMR's claim.[123] Due to

---

[120] *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1156 (5th Cir. 2006).

[121] 18 U.S.C. § 1030(g); *see also* 18 U.S.C. § 1030(c)(4)(A)(i)(I–V).

[122] *Energy Intel. Grp. Inc v. Kirby Inland Marine LP*, No. 4:19-CV-03520, 2021 WL 183428, at *1 (S.D. Tex. Jan. 19, 2021).

[123] *Id. See also Pointenorth Ins. Grp. v. Wade*, No. 1:13-CV-04203-HLM, 2014 WL 12690895, at *5 (N.D. Ga. Feb. 19, 2014) (dismissing CFAA claim for similar reasons).

the conclusory nature of EMR's allegations,[124] EMR's CFAA action will be dismissed

without prejudice.

### Stored Communications Act (18 U.S.C. § 2701 *et seq.*)

The SCA "governs the privacy of stored electronic communications in the United

States."[125] The statute provides, in pertinent part:

> Except as provided in subsection (c) of this section whoever-
>
>> (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or
>> (2) intentionally exceeds an authorization to access that facility;
>
> and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.[126]

Accordingly, to be liable under the SCA, SECAI "must have gained unauthorized access

to a facility through which electronic communication services are provided (or the access

must have exceeded the scope of authority given) and must thereby have accessed

electronic communications while in storage."[127]

The statute defines an "electronic communication service" as "any service which

provides to users thereof the ability to send or receive wire or electronic

communications."[128] The statute's definition of "electronic storage" is: "(A) any temporary,

intermediate storage of a wire or electronic communication incidental to the electronic

---

[124] *See* Rec. Doc. 1, ¶¶ 21, 54.
[125] *Pope v. Stanley*, No. 6:17-CV-01422, 2018 WL 1954307, at *2 (W.D. La. Apr. 4, 2018), *report and recommendation adopted*, No. 6:17-CV-01422, 2018 WL 1936697 (W.D. La. Apr. 24, 2018).
[126] 18 U.S.C. § 2701(a).
[127] *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 791 (5th Cir. 2012).
[128] 18 U.S.C. § 2510(15) (incorporated by reference in 18 U.S.C. § 2711(1) of the SCA).

transmission thereof; and (B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication."[129]

EMR alleges SECAI accessed its "computers and cell phones."[130] SECAI argues EMR's allegations fall outside the scope of the SCA. The Court agrees. In *Garcia v. City of Laredo, Tex.*, the Fifth Circuit adopted the view that "the relevant 'facilities' that the SCA is designed to protect are not computers that *enable* the use of an electronic communication service, but instead are facilities that are *operated by* electronic communication service providers and used to store and maintain electronic storage."[131] In other words, "the statute envisions a *provider* (the [Internet Service Provider] or other network service provider) and a *user* (the individual with an account with the provider), with the *user's communications in the possession of the provider*."[132] Thus, EMR has failed to allege that its "computers and cell phones" are protected "facilities" under the SCA. Furthermore, "information that an individual stores to his hard drive or cell phone is not in electronic storage under the statute."[133] Because EMR has not alleged that SECAI obtained any information from a "facility through which an electronic communication service is provided" while the information was "in electronic storage," the EMR's claim under the SCA will be dismissed.

## Electronic Communications Privacy Act (18 U.S.C. § 2511 *et seq.*)

Under 18 U.S.C. § 2511(a), "any person who ... intentionally intercepts, endeavors

---

[129] 18 U.S.C. § 2510(17).
[130] Rec. Doc. 1, ¶ 21.
[131] *Garcia v. City of Laredo, Tex.*, 702 F.3d 788, 792 (5th Cir. 2012) (emphasis in original) (quoting *Freedom Banc Mortg. Servs., Inc. v. O'Harra,* No. 2:11–cv–01073, 2012 WL 3862209, at *9 (S.D.Ohio Sept. 5, 2012)).
[132] *Id.* at 793 (emphasis in original) (quoting Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It,* 72 Geo. Wash. L. Rev. 1208, 1215 n.47 (2004)).
[133] *Id.* (citing *Freedom Banc,* 2012 WL 3862209, at *8–9; *Hilderman v. Enea TekSci, Inc.,* 551 F.Supp.2d 1183, 1205 (S.D. Cal. 2008); *Bailey v. Bailey,* No. 07–11672, 2008 WL 324156, at *6 (E.D. Mich. Feb. 6, 2008).

to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication ... shall be punished as provided [in proceeding sections]." In § 2520, the statute provides for a civil action for violations of § 2511.[134]

The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device."[135] The Fifth Circuit holds that, "in order for electronic communications to be intercepted, acquisition must occur contemporaneously with transmission—*i.e.*, acquisition must occur during 'flight.'"[136] Therefore, the statute does not protect communications stored on a device; for example, "[o]nce an email is received, it is no longer in transit—the email is stored and accessing it does not constitute an interception."[137]

EMR alleges that "electronically stored information, private satellite video communications, and other communications personal and proprietary to EMR and its employees, was accessed, intercepted, disclosed, copied and damaged without permission, consent or authorization."[138] Aside from the use of the word "intercepted," the Court agrees with SECAI that EMR's allegations provide insufficient factual support. To state an ECPA claim, EMR must provide factual allegations giving rise to a plausible inference that SECAI acquired communications contemporaneously with transmission. Because no such allegations with any substance are found in the Complaint, the Court

---

[134] 18 U.S.C. § 2520(a). *See also DIRECTV, Inc. v. Bennett*, 470 F.3d 565, 569 (5th Cir. 2006). However, the Fifth Circuit has held that "there is no civil liability for 'procurement[.]'" *Peavy v. WFAA-TV, Inc.*, 221 F.3d 158, 168–69 (5th Cir. 2000).
[135] 18 U.S.C. § 2510(4).
[136] *Beasley v. Greenlee*, No. 3:22-CV-00532-X-BT, 2024 WL 3851382, at *9 (N.D. Tex. July 25, 2024), *report and recommendation adopted*, No. 3:22-CV-0532-X-BT, 2024 WL 3851599 (N.D. Tex. Aug. 16, 2024) (citing *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 461–62 (5th Cir. 1994)).
[137] *Id.* (citing *Steve Jackson Games, Inc.*, 36 F.3d at 461–62).
[138] Rec. Doc. 1, ¶ 21.

will dismiss the ECPA claim without prejudice.

## III.    CONCLUSION

For the foregoing reasons, the Motion[139] is GRANTED IN PART and DENIED IN PART.

SECAI's Motion to Dismiss Counts IV–VII of the Complaint pursuant to Rule 12(b)(6) is GRANTED, and the claims are dismissed without prejudice. EMR is granted leave to replead Counts IV–VII in an amended complaint within twenty-one (21) days from the date of this Ruling.

SECAI's Motion to Dismiss for improper venue pursuant to Rule 12(b)(3) and for lack of personal jurisdiction pursuant to Rule 12(b)(2) is DENIED. SECAI's Motion to Transfer Venue pursuant to 28 U.S.C. § 1404 is DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this  1st  day of _____ July _____, 2025.

_____

**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[139] Rec. Doc. 9.